# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION (COLUMBUS)

| | |
|---|---|
| RUSSETTA W.,[1] | Case No. 2:23-cv-02260 |
| Plaintiff, | District Judge Edmund A. Sargus |
| | Magistrate Judge Caroline H. Gentry |
| vs. | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## REPORT AND RECOMMENDATIONS[2]

Plaintiff filed an application for Supplemental Security Income (SSI) on February 1, 2021. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

**I.      BACKGROUND**

Plaintiff asserts that she has been under a disability since January 1, 2016.[3] Plaintiff was twenty-eight years old on the SSI application date. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 78-102), Plaintiff's Statement of Errors ("SE," Doc. No. 12), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

**II.     STANDARD OF REVIEW**

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant period of consideration in this case begins on February 1, 2021. *See* 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x. 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [the plaintiff] filed his protective application.").

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

### III. FACTS

#### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since February 1, 2021, the SSI application date.

Step 2: She has the severe impairments of generalized anxiety disorder, depressive disorder, personality disorder, and chronic headaches.

| | |
|---|---|
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work as defined in 20 C.F.R. § 416.967(c), subject to the following limitations: "[S]he must avoid loud[-]noise workplace environments. The work should be limited to simple work involving understanding, remembering[,] and carrying out simple instructions, and not involving detailed or complex instructions. The work must be free of fast-paced production requirements, such as assembly line work, or work that requires hourly production quotas. There should be few if any workplace changes. There should be no more than occasional interaction with supervisors and coworkers, with no tandem tasks, and no interaction with the public. All the above limitations are as defined in the Selected Characteristics of Occupations of the DOT." <br><br> She is unable to perform any of her past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Decision, Doc. No. 7-2 at PageID 83-98.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 98-99.)

### B. State Agency Psychological Consultants

State agency psychological consultant Cynthia Waggoner, Psy.D. completed a Disability Determination Explanation form in June 2021. (AR, Doc. No. 7-3 at PageID 170-71, 173-74.) Dr. Waggoner found moderate impairment in the "B Criteria" areas of interacting with others and adapting or managing oneself. (*Id.* at PageID 170.) She found mild impairment in concentrating, persisting, or maintaining pace, and no impairment in

the area of understanding, remembering, or applying information. (*Id.*) In the mental RFC section of the form, Dr. Waggoner indicated that Plaintiff was moderately limited in the abilities of interacting appropriately with the general public and accepting instructions and responding appropriately to criticism from supervisors. (*Id.* at PageID 173.) Dr. Waggoner opined that Plaintiff could "interact with others on a brief and superficial basis." (*Id.*) In the area of adaptation, Dr. Waggoner indicated that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting. (*Id.*) She opined: "[Plaintiff can] adapt to a work environment where duties are relatively static and where change is infrequent." (*Id.* at PageID 174.) Dr. Waggoner otherwise found no significant limitations in the other areas of functioning that related to social interactions and adaptation. (*Id.* at PageID 173-74.) Dr. Waggoner also indicated that Plaintiff had no significant limitations in the area of understanding and memory and had no more than mild limitations in sustained concentration and persistence. (*Id.* at PageID 173.)

Courtney Zeune, Psy.D. reviewed the updated record at the reconsideration level in August 2021. (AR, Doc. No. 7-3 at PageID 179, 181-83.) Dr. Zeune adopted Dr. Waggoner's assessment. (*Id.*)

The ALJ evaluated the consultants' assessments separately but provided the same analysis for both. (Decision, Doc. No. 7-2 at PageID 91-92.) The ALJ concluded that their assessments were "partially persuasive." (*Id.*)  The ALJ reasoned that the degree of limitation that the consultants assessed was "consistent with what is reflected in the

6

treatment records while not working," but he explained that additional limitations were warranted:

> [S]uch records are also clear that [Plaintiff] has exacerbation when away from home, and particularly when separated from her children, both circumstances which would be present when at work, unless working from home. The latter trigger seems to be somewhat connected with an abusive childhood. In any event, given the record as a whole, exacerbation of her anxiety would be expected while present in the workplace and away from home and her children, and would be expected to interfere to some degree with understanding, remembering and applying detailed instructions, and with concentration, persistence and pace for detailed instructions and extended periods of concentration, requiring additional limitations (1F/22, 25-29; 2F/9-10; 8F/6-7, 16-17, 43, 53-54, 79; 12F/57-58). Additionally, episodic symptoms of headaches (3F/5; 8F/4; 11F/17, 19, 61, 64; 9F/9; 10F/9-10) would also be expected to be distracting and interfere with the same domains of functioning.

(*Id.*)

## IV. LAW AND ANALYSIS

Plaintiff's sole assertion of error is that the ALJ erred in his analysis of the state agency psychological consultants' prior administrative medical findings. (SE, Doc. No. 12 at PageID 999.) Plaintiff argues that reversal is warranted because the ALJ found that the consultants' assessments were partially persuasive, but he did not adopt their opinion that Plaintiff could interact with others "on a brief and superficial basis" and did not explain why he did not do so. (*Id.*) For the reasons discussed below, Plaintiff's arguments are not well-taken and the ALJ's decision should be affirmed.

### A. Applicable Law.

ALJs are required to analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 416.920c (emphasis added). A "medical opinion" is a "statement

from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 416.920b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 416.920c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 416.920c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord*

*Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative

9

record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024 U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[4] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### B. The ALJ Did Not Reversibly Err In Evaluating The Findings Of The State Agency Psychological Consultants.

Plaintiff contends that the ALJ failed to adequately evaluate the administrative findings of Drs. Waggoner and Zeune because "the ALJ did not include 'brief' or 'superficial' when addressing [Plaintiff's] ability to interact with others" in the RFC. (SE, Doc. No. 12 at PageID 999.) Plaintiff concedes that the ALJ's RFC limitation for no interaction with the public is more restrictive than—and adequately accounts for—the

11

consultants' opinion regarding Plaintiff's ability to interact with the public. (*Id.* at PageID 1001.) Plaintiff instead challenges the ALJ's RFC limitations related to Plaintiff's ability to interact with coworkers and supervisors. (*Id.*) According to Plaintiff, "[t]he ALJ's inclusion of 'occasional' does not adequately address a limitation to 'brief' or 'superficial.'" (*Id.*) Plaintiff also argues that "'occasional' and 'superficial' are not interchangeable." (*Id.* at PageID 1002.)

Plaintiff correctly asserts that the terms "occasional" and "superficial" are not interchangeable. Social Security Ruling (SSR) 83-10 provides definitions of terms and concepts that are frequently used in evaluating disability.[5] SSR 83-10, 1983 WL 31251 (S.S.A. January 1, 1983). The SSR defines "occasional" as occurring "from very little up to one-third of the time." 1983 WL 31251, at *5. Additionally, this Court has routinely recognized that "occasional contact" refers to the *quantity* of time spent with individuals, while "superficial contact" goes to the *quality* of the interactions. *See Garvin v. Comm'r of Soc. Sec.,* No. 2:20-CV-2566, 2021 WL 2200423, at *6 (S.D. Ohio June 1, 2021) (Deavers, M.J.), *report and recommendation adopted,* No. 2:20-CV-2566, 2021 WL 2533191 (S.D. Ohio June 21, 2021) (Sargus, D.J.) (citing, e.g., *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *5 (S.D. Ohio July 9, 2020) (Vascura, M.J.), *report and recommendation adopted sub nom. Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020) (Morrison, D.J.) (reversing

---

[5] Although SSRs do not have the same force and effect as statutes or regulations, they "are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

and remanding where ALJ explanation was lacking because "superficial interaction" is a well-recognized, work-related limitation); *Corey v. Comm'r of Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) (Vascura, M.J.) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions.'"); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Vascura, M.J.) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added) (citation omitted))).

However, although the ALJ was required to consider medical opinion evidence when determining the RFC, he was not required to adopt them or adopt any such findings verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Moreover, even when an ALJ gives great weight to an opinion—which did not happen here—"there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). At the same time, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 SSR LEXIS 5, at *7 (S.S.A. July 2, 1996).

Plaintiff's contention lacks merit because the ALJ adequately accounted for both the quantity and the quality of social interaction in the RFC. As discussed above, the state agency psychological consultants opined that Plaintiff was moderately limited in her

13

ability to interact with others and so could "interact with others on a brief and superficial basis." (AR, Doc. No. 7-3 at PageID 170-71, 173, 179, 181-83.) The ALJ concluded that the consultants' assessments were "partially persuasive." (Decision, Doc. No. 7-2 at PageID 92.) In the RFC, he precluded Plaintiff from interacting with the public and limited her to "no more than occasional interaction with supervisors and coworkers, with no tandem tasks." (Decision, Doc. No. 7-2 at PageID 87.)

The Court agrees with Plaintiff's concession that the ALJ's limitation of Plaintiff to no interaction with the general public is more restrictive than—and thus more than adequately accounts for—the State agency reviewers' assessment that Plaintiff is limited to superficial and/or occasional interaction with the general public. But the undersigned disagrees with Plaintiff's assertion that the ALJ's RFC limitations do not account for the consultants' opinions regarding Plaintiff's ability to interact with coworkers and supervisors. The ALJ's limitation for "occasional interaction" addresses the consultants' opinions regarding the *quantity* of time ("brief") that Plaintiff could spend with such individuals. The ALJ's additional limitation to "no tandem tasks" addresses the reviewers' assessments regarding the *quality* of the interactions ("superficial") between Plaintiff and her supervisors or coworkers. Thus, although the ALJ did not specifically explain the differences between "brief," "occasional," and "superficial," the ALJ sufficiently accounted for the differences between these terms in the RFC.

Plaintiff further argues that even if the limitation to no tandem tasks is considered a "quality-type of interaction," the ALJ's limitation accounts only for the consultants' opinions related to interaction with coworkers—not for their opinions regarding

14

interaction with supervisors. (SE, Doc. No. 12 at PageID 1002-03.) This contention, too, is not well-taken.

Plaintiff asserts: "Tandem tasks are performed with coworkers. They are not in any way related to supervisors. An employee does not regularly engage in collaborative tasks with their supervisors. Thus, a limitation [t]o tandem tasks would not address a limitation to superficial interaction with supervisors." (*Id.* at PageID 1003.) Plaintiff does not cite any caselaw to support this assertion. Yet courts in this district have found that a limitation to "no tandem tasks" is a qualitative limitation that adequately accounts for an opinion that limits a claimant to superficial interactions with "others"—which includes both coworkers **and** supervisors. *See, e.g., Latisha D.B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3875, 2023 U.S. Dist. LEXIS 129262, at *10 (S.D. Ohio July 25, 2023) (Litkovitz, M.J.), *report and recommendation adopted,* No. 2:22-cv-3875, 2023 U.S. Dist. LEXIS 151981 (S.D. Ohio, Aug. 28, 2023) (Morrison, D.J.) (ALJ's limitations for "no tandem tasks or customer service responsibilities" account for the qualitative connotation of the state agency psychological consultants' limitation to "superficial interaction with coworkers, supervisors, and the general public"); *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *11-12 (S.D. Ohio July 28, 2020) (Preston Deavers, M.J.), *report and recommendation adopted*, No. 2:19-cv-3670, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020) (Graham, D.J.) (RFC limitation to no tandem tasks is "a qualitative limitation on social interaction" and accounts for state agency psychological consultants' opinion that the plaintiff needed "superficial contact with coworkers and supervisors").

15

Likewise, several other district courts within this Circuit have concluded that the same or similar terms account for the qualitative connotation of "superficial" interactions with coworkers **and** supervisors. *See, e.g., Kearns v. Comm'r of Soc. Sec.*, No. 3:19 CV 01243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted*, No. 3:19-cv-1243, 2020 WL 2839654 (N.D. Ohio June 1, 2020) ("the ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the opinion of Drs. Matyi and Finnerty that Kearns be limited to superficial interaction with others"); *Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-cv-280, 2022 U.S. Dist. LEXIS 236048, at *16-17 (W.D. Mich. Dec. 29, 2022), *report and recommendation adopted*, No. 1:22-cv-280, 2023 U.S. Dist. LEXIS 8698 (W.D. Mich. Jan. 18, 2023) (restricting the plaintiff "to no interaction with the public, occasional interaction with supervisors and coworkers, and no tandem or cooperative tasks" constituted 'significant limitations . . . on the quality of the interaction, essentially amount[ing] to no more than superficial contact with supervisors and coworkers').

The undersigned therefore concludes that the ALJ's RFC limitation for "no tandem tasks" adequately accounts for the state agency psychological consultants' opinions that Plaintiff was limited to superficial interactions with coworkers and supervisors.

Plaintiff's contentions also lack merit because the ALJ discussed Plaintiff's social functioning elsewhere in the decision and explained why he included certain social limitations in the RFC, and these conclusions are supported by substantial evidence. For example, the ALJ found at Step Three that Plaintiff has moderate limitation in the "B

16

criteria" area of interacting with others. (Decision, Doc. No.7-2 at PageID 85-86.) The ALJ acknowledged Plaintiff's subjective complaints about difficulty getting along with others, which included separation anxiety when she is away from her children, distrust of others, anxiety when she leaves her home and goes out in public, fear of judgment, isolation, and mood swings. (*Id.* at PageID 85.) The ALJ cited to medical records that showed abnormalities such as depressed and/or anxious moods and pressured speech. (*Id.* at PageID 86.) The ALJ balanced this evidence with treatments records that documented Plaintiff's abilities in these areas, such as making a new friend, taking her children trick-or-treating, shopping for Christmas gifts on her own, and selling homemade crafts at yard sales. (*Id.*) The ALJ also cited normal mental status findings that included a neutral mood, good eye contact, and cooperative behavior. (*Id.*)

      The ALJ also provided a detailed summary of Plaintiff's medical records and mental health treatment history in the RFC analysis. (Decision, Doc. No. 7-2 at PageID 87-91.) Here, the ALJ discussed Plaintiff's subjective complaints of mood swings, anxiety, panic attacks, and depression. (*Id.*) He also discussed Plaintiff's daily activities, including Plaintiff's complaints of difficulties with driving, anxiety interacting with others during her prior jobs, separation anxiety when she is away from her children, distrust of others, difficulty relating to others, isolative behavior, and difficulty with leaving home and going out in public. (*Id.*) The ALJ acknowledged several abnormal objective examination findings that included depressed and anxious moods, a slumped posture, racing thoughts, pressured or loud speech, difficulty making eye contact, and restlessness. (*Id.* at PageID 89-91.) The ALJ compared these findings to other

17

examinations that showed a neutral mood, an appropriate affect, clear speech, cooperative behavior, good eye contact, goal-directed thought processes, appropriate judgment and insight, and no suicidal or homicidal ideation. (*Id.*) The ALJ also cited Plaintiff's reports of abilities with daily activities such as doing some chores, caring for her minor children, going grocery shopping with her husband, shopping for Christmas gifts on her own, making and selling crafts, and engaging in self-care activities which included doing her nails, cleaning, playing video games, and crafting. (*Id.* at PageID 88-91.) The ALJ found that on balance, the evidence did not support Plaintiff's allegations of symptom severity. (Decision, Doc. No. 7-2 at PageID 88-89.) He concluded that to account for Plaintiff's mental impairments, the RFC should limit Plaintiff to carrying out the range of simple, routine tasks described in the RFC that involved occasional interaction with supervisors and coworkers, with no tandem tasks, and no interaction with the public. (*Id.* at PageID 94.) These conclusions are supported by substantial evidence.

In sum, although Plaintiff may have preferred a different RFC than the one determined by the ALJ, the ALJ thoroughly explained the bases for the RFC determination as it relates to the State Agency psychologists' proposed limitations and his explanation is supported by substantial evidence. The ALJ's decision should therefore be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

    1.    Plaintiff's Statement of Errors (Doc. No. 12) be OVERRULED;

    2.    The Court AFFIRM the Commissioner's non-disability determination; and

    3.    The case be terminated on the Court's docket.

s/ *Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).